## MARKHAM v. BARNETT, Bank Com'r.

No. 24609. Jan. 14, 1936.

Rehearing Denied Feb. 11, 1936.

Second Petition for Rehearing Denied
March 3, 1936.

Roscoe E. Harper and Gentry Lee, for plaintiff in error.

M. B. Cope and Scott Ferris, for defendant in error.

WELCH, J. The parties will be referred to as they appeared in the trial court, that is, C. B. Markham as petitioner, and the State Bank Commissioner as respondent.

The Citizens Bank & Trust Company of Pryor became insolvent and was taken over by the Bank Commissioner on or about January 31, 1924, and thereafter, in accordance with the statutes, the usual court proceeding was had for administration and liquidation of the affairs of the bank.

This cause or controversy had its origin when the petitioner filed his petition for the allowance of a preferred claim in the sum of $10,000. It was alleged, in substance, that when the respondent took over the bank there was on deposit and subject to the check of D. Buddrus, cashier and special disbursing agent for the Five Civilized Tribes, the sum of $10,000 in moneys belonging to the United States of America; that said deposit was a preferred deposit and constituted a preferred claim; and the said D. Buddrus, for and on behalf of the United States of America, filed proper claim with the liquidating agent for said sum; that the American Surety Company of New York, surety on the bond given to secure said deposit, paid said $10,000 to the United States and received proper assignment of said claim; that petitioner paid said sum of $10,000 to the said surety company, and the surety company then assigned said claim to petitioner; that thereupon and thereby petitioner became the owner of a preferred claim for said $10,000 and that petitioner was entitled to have said claim allowed as a preferred claim.

The respondent for his answer or response admitted the foregoing facts, but alleged, in substance, that petitioner had theretofore been an active officer and director, as well as stockholder in said bank, and was not entitled to present such claim; that if petitioner was entitled to any claim against the assets of the bank, the same should be allowed only as a common claim; that petitioner was indebted to the bank in the sum of $5,000 on his double liability as a stockholder of the bank; and respondent prayed judgment against petitioner for such sum.

The petitioner admitted his double liability as stockholder in the sum of $5,000, and agreed that it be offset against his claim.

Upon trial, the trial court rendered judgment wholly denying petitioner's claim, and it is from that judgment that this appeal is prosecuted.

It is petitioner's contention that D. Buddrus, for the United States Government, was entitled to a preferred claim; that it was assignable and was assigned to the surety company, and by the surety company to the petitioner, and that he thereby and thereupon became the owner with the same right to a preferred claim as originally existed in favor of D. Buddrus.

Section 3466, Revised Statutes of the United States (Title 31, section 191, USCA), is as follows:

"Priority Established. Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

Section 3468, Revised Statutes of the United States (Title 31, section 193, USCA), is as follows:

"Priority of Sureties. Whenever the principal in any bond given to the United States is insolvent, or whenever, such principal being deceased, his estate and effects which come to the hands of his executor, administrator or assignee, are insufficient for the payment of his debts, and, in either of such cases, any surety on the bond, or the executor, administrator, or assignee of such surety pays to the United States the money due upon such bond, such surety, his executor, administrator, or assignee, shall have the like priority for the recovery and receipt of the moneys out of the estate and effects of such insolvent or deceased principal as is secured to the United States; and may bring and maintain a suit upon the bond, in law or equity, in his own name, for the recovery of all moneys paid thereon."

The effect of these statutes was passed on by the Supreme Court of the United States in an identical situation in the case of Bramwell, Superintendent of Banks for the State of Oregon. v. United States Fidelity & Guaranty Co., 269 U. S. 483, 70 L. Ed. 368, 46 Sup. Ct. 176. In that case the Superintendent of the Klamath Indian Reservation had on deposit with the First State & Savings Bank of Klamath Falls, Ore., $96,000 Indian moneys, individual and tribal. The bank had given a bond to the United States with the United States Fidelity & Guaranty company as surety to secure the payment of the deposit. The bank became insolvent, and the surety company paid the amount of the deposit to the superintendent of the reservation and received an assignment of the claim against the bank. The surety company then brought an action for a preferred claim against the assets of the bank, which it claimed should be paid in full out of the bank's assets, on account of section 3466 and section 3468, Revised Statutes of the United States, supra. The Supreme Court of the United States affirmed the decision of the lower federal courts, holding that indebtedness of a bank for Indian moneys, individual and tribal, deposited with it by the superintendent of the Indian reservation and secured by a bond given by the bank to the United States is an indebtedness to the United States. The court scarcely discussed the question with respect to whether the indebtedness constituted a debt to the United States, using the following language:

"The lower courts rightly held that the amount owed by the bank on account of the deposit in question was a debt due to the United States."

The court there held further that the surety company, having paid the United States the amount of the deposit and received an assignment of the preferred claim, became the owner of the preferred claim, with the same rights to priority as theretofore belonged to the United States.

That case was cited and followed to the same conclusion in the following cases which arose in Oklahoma, to wit: Mothersead v. U. S. Fidelity & Guaranty Co., 22 Fed. (2d) 644, and Mothersead v. New Amsterdam Casualty Co., Mothersead v. Fidelity & Casualty Company of New York, and Mothersead v. Fidelity & Deposit Company of Maryland, and Mothersead v. American Surety Company of N. Y., reported in 22 (2d) Fed at pages 654 and 655.

Since the United States Government here held a valid preferred claim and could fully convey it by assignment to the surety company, then it would seem to follow that the surety company could in a similar manner transfer the claim by assignment to the petitioner.

The respondent urges that it would be con-

trary to public policy to permit the plaintiff to become the owner of this preferred claim, this because the petitioner had theretofore been a director and stockholder in the bank when it closed. We are unable to follow that reasoning. The surety company could have collected its preferred claim and then disposed of the money by delivering it to petitioner or any other to whom it saw fit. Nothing more than the same result is accomplished by the assignment of the claim from the surety company to petitioner before collection.

The respondent urges that it is the policy of the law to protect the depositors in a failed bank, and that is true, but such policy of protection can only be applied to funds and assets to which the depositors are entitled to look. However diligent the law might be in the protection of depositors, the law cannot protect depositors by paying to them moneys in the bank which belonged to the United States Government, and for which there exists a valid preferred claim. At the closing of the bank this $10,000 could not be appropriated to the payment of general depositors, because it needs must be held to pay the preferred claim, and it is too difficult to follow the theory that the assignment of the preferred claim to the surety company and then to the petitioner could in any manner operate to change the character of the fund so as to make it applicable to disbursement to the general depositors.

We have not overlooked authorities cited by the respondent to the effect generally that claims and deposits in favor of bank officers and stockholders will in payment be relegated to a position inferior to the claims of depositors. Those authorities relate to general deposits and claims of stockholders and officers, and in general refer to funds and assets which upon the closing of the bank were applicable to the payment of general depositors. Those authorities have no force here, as the petitioner is merely seeking to receive payment of a preferred claim, which upon the closing of the bank was a preferred claim and has never lost its identity as such. And the allowance and payment of this preferred claim to the petitioner does not pay petitioner any funds which had theretofore been payable to general depositors, and, therefore, does not diminish the assets of the bank which upon closing were applicable to the payment of claims of general depositors. Therefore, in the allowance and payment of this preferred

claim there is no departure from the policy of the law to protect depositors in so far as they may be protected out of the general assets of the bank, and out of the statutory liability of stockholders.

We must conclude that the trial court was in error in denying petitioner's preferred claim in the sum of $10,000.

The respondent sought judgment against the petitioner for $5,000 on account of petitioner's stockholder's liability. The respondent was clearly entitled to collect such sum from the petitioner under the provisions of the statute creating such liability.

If the petitioner had not paid the $10,000 to the surety company and taken an assignment of the preferred claim, then the closed bank would have paid the $10,000 to the surety company and would have collected from petitioner his $5,000 stockholder's liability. The same result is reached when the bank pays the preferred claim to the petitioner, first deducting therefrom petitioner's stockholder's liability of $5,000. This should have been required by proper judgment of the trial court, and in failing to so determine the matter there was error.

The judgment of the trial court is reversed, and the cause is remanded, with directions to allow petitioner's preferred claim, and to charge against petitioner the amount of his stockholder's liability at $5,000, and to direct payment to petitioner of the balance of his preferred claim; and thus discharging petitioner's liability as a stockholder, and the liability of the bank to pay the preferred claim of the original deposit due the United States Government.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, BUSBY, PHELPS, and GIBSON, JJ., concur. RILEY, J., absent. CORN, J., dissents.